| |
|---|
| **Town of Hempstead v Hochul** |
| 2025 NY Slip Op 32213(U) |
| June 23, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 450653/2025 |
| Judge: Arthur F. Engoron |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

| | | |
|---|---|---|
| PRESENT: | **HON. ARTHUR F. ENGORON** | PART 37 |
| | *Justice* | |

-------------------------------------------------------------X

TOWN OF HEMPSTEAD, DONALD X. CLAVIN, BEN JACKSON, BEN'S GENERAL CONTRACTING CORP.,

Plaintiffs,

- v -

KATHY HOCHUL, TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY, METROPOLITAN TRANSPORTATION AUTHORITY,

Defendants.

-------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 450653/2025 |
| MOTION DATE | 05/07/2025, 05/07/2025, 05/13/2025 |
| MOTION SEQ. NO. | 001 002 003 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 103, 104, 105, 106, 107, 108, 119,

were read on this motion to          DISMISS          .

The following e-filed documents, listed by NYSCEF document number (Motion 002) 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 109, 110, 111, 112,

were read on this motion to          DISMISS          .

The following e-filed documents, listed by NYSCEF document number (Motion 003) 113, 114, 115, 116, 117, 118, 120,

were read on this motion for          INJUNCTION/RESTRAINING ORDER          .

Upon the foregoing documents, and for the reasons stated during oral argument on June 17, 2025, defendants' motions to dismiss are granted and, accordingly, plaintiffs' motion for an injunction is denied without prejudice, solely as moot.

Background

On April 1, 2019, the New York Legislature enacted the "Traffic Mobility Act," creating the Central Business District Tolling Program (the "Tolling Program"), also known as "Congestion Pricing," for the purposes of alleviating traffic congestion, and therefore reducing air pollution, in and around New York City's Central Business District (the "CBD") and funding mass transit capital projects. Vehicle and Traffic Law § 1704-a. As part of the Tolling Program, the Legislature explicitly gave defendant Triborough Bridge and Tunnel Authority ("TBTA") the authority to implement a plan for the program's tolls, credits, discounts and/or exemptions. Id.

On March 27, 2024, after myriad meetings and public comment, TBTA's board adopted a tolling schedule that was to go into effect on June 30, 2024, with a $15 toll for most drivers entering the CBD, essentially the area below 60th Street.

450653/2025  TOWN OF HEMPSTEAD ET AL vs. HOCHUL, KATHY ET AL
Motion No. 001 002 003

Page 1 of 4

On June 5, 2024, defendant Governor Kathy Hochul unilaterally announced a "pause" on implementing the Tolling Program.

On November 14, 2024, Governor Hochul announced a revised plan to implement the Tolling Program, now with a $9 toll for most drivers entering the CBD, starting January 5, 2025. At the time, Governor Hochul stated that "… I made the decision to put the congestion pricing program on pause, while we devise a different path forward … And I'm proud to announce we have found a path to fund the MTA." NYSCEF Doc. No. 2 ¶ 73.

Four days later, on November 18, 2024, the boards of TBTA and defendant Metropolitan Transportation Authority ("MTA") voted to adopt a "phased-in" tolling schedule, in line with what Governor Hochul had announced, now with an initial $9 toll for most drivers entering the CBD that would, over the course of six years, rise to the prior-planned and approved $15 toll.

On November 21, 2024, plaintiffs, Town of Hempstead, Donald X. Clavin Jr., Ben Jackson, and Ben's General Contracting Corp., commenced the instant action, arguing that, in implementing the phased-in schedule, the TBTA/MTA violated the State Administrative Procedure Act ("SAPA"), and that Governor Hochul acted *ultra vires* when she "announced" the reduced tolling schedule and un-paused the Tolling Program. NYSCEF Doc. No. 2.

After a removal to and remand from Federal court, and a transfer from Nassau to New York County, defendants now move, pursuant to CPLR 3211(a)(1), (2) and (7), to dismiss. NYSCEF Doc. Nos. 103, 90. Plaintiffs now move, pursuant to CPLR Article 63, for a preliminary injunction. NYSCEF Doc. No. 113.

Discussion

*SAPA Rules*

SAPA, codified at State Administrative Procedure Act Law § 100 *et seq.*, lays out two different types of agency rules, referred to as "Type (i)" rules and "Type (ii)" rules. APA § 102(a). Type (i) rules are "the whole or part of each agency statement, regulation or code of general applicability that implements or applies law, or prescribes a fee charged by or paid to any agency or the procedure or practice requirements of any agency, including the amendment, suspension or repeal thereof." APA § 102(a)(i). Type (ii) rules are "the amendment, suspension, repeal, approval, or *prescription for the future of rates*, wages, security authorizations, corporate or financial structures or reorganization thereof, prices, facilities, appliances, services or allowances therefor or of valuations, costs or accounting, or practices bearing on any of the foregoing whether of general or particular applicability." APA § 102(a)(ii) (emphasis added).

The more specific Type (ii) rules are exempt from certain analysis and consideration requirements imposed upon the more general Type (i) rules, specifically, as relevant here, from substantial revision and certain public notice requirements. See APA §§ 202-a, 202-b, 202-bb, 202(2)(a), and 202(4-a)(a) ("Except with respect to any [Type (ii) rule], prior to the adoption of a rule, an agency shall submit a notice of revised rule making to the secretary of state for publication in the state register…").

450653/2025  TOWN OF HEMPSTEAD ET AL vs. HOCHUL, KATHY ET AL                Page 2 of 4
Motion No.  001 002 003

2 of 4

Plaintiffs argue that the subject phased-in tolling schedule is a Type (i) rule, not a Type (ii) rule as defendants aver, because, inter alia, it not only sets toll amounts but also "sets and implements categories of users and vehicles that are discounted and partially exempt or treated differently (such as low-income registrants) and denies and excludes other users (including Plaintiffs) from those partial discounts and exemptions." NYSCEF Doc. No. 116. This argument is cute, but unpersuasive. The tolling schedule simply sets various tolls for various types of vehicles at various times. So motorcycles pay lower tolls than cars to enter the CBD and cars pay lower tolls than trucks; but they all pay tolls.

As Judge Lewis J. Liman stated in Chan v United States Dept. of Transp., 2024 WL 5199945, at *41 (SD NY Dec. 23, 2024), when analyzing the same facts and finding that the subject phased-in tolling schedule was a Type (ii) rule:

> The proposed rule sets forth only the different toll rates and exemptions to be applied. See Hudson River Sloop, 119 NYS3d at 390 (finding rule "was properly promulgated as an economic rule under SAPA § 102(a)(ii)" where it acted as "a prescription for future allowances for facilities and services as well as a practice bearing on rates"). Indeed, Black's Law Dictionary defines rate as "[a]n amount paid or charged for a good or service." *Rate*, Black's Law Dictionary (12th ed. 2024); see also Carey Transp., Inc. v. Triborough Bridge & Tunnel Auth., 345 NE2d 281, 282 (NY 1976) (referring to the TBTA's authority to fix "toll rates"). It is the New York Legislature's Traffic Mobility Act—not the TBTA's rule—that outlines the structure the Tolling Program is to take including the boundaries of the CBD, the parameters of the variable tolling structure, and the exemptions to be contemplated and applied. See N.Y. Veh. & Traf. Law §§ 1701 *et seq.*.

Simply put, the phased-in tolling schedule at issue is a Type (ii) rule that defendants properly promulgated pursuant to the Vehicle and Traffic Law to lay out the variable rates different motorists must pay to enter the CBD; rates that will, in any event, rise to match the previously approved tolls by 2031. Accordingly, defendants' motion to dismiss plaintiffs first cause of action, alleging a violation of SAPA, should be dismissed.

### Governor Hochul's Alleged Ultra Vires Act

The Court of Appeals has held that "the executive has the power to enforce legislation and is accorded great flexibility in determining the methods of enforcement" but that "when the Executive acts inconsistently with the Legislature, or usurps its prerogatives, that the doctrine of separation is violated" and, thus, the executive has acted *ultra vires*. Clark v Cuomo, 66 NY2d 185, 189 (1985) (internal citation omitted).

Here, plaintiffs argue that the Legislature, in enacting the Tolling Program, gave specific powers to TBTA that Governor Hochul usurped when she announced the phased-in tolling schedule ("*I'm* proud to announce we have found a path to fund the MTA…") and publicly announced

450653/2025  TOWN OF HEMPSTEAD ET AL vs. HOCHUL, KATHY ET AL                    Page 3 of 4
Motion No. 001 002 003

3 of 4

[* 3]

that the TBTA/MTA "*will* implement a congestion pricing plan with a reduced daytime toll of $9" before any vote had occurred.

Even affording the complaint a liberal construction, plaintiffs have failed to state a cause of action. On November 14, 2024, Governor Hochul announced a plan for lower tolls and confidently asserted that the TBTA/MTA, which had already approved a schedule with higher tolls, would sign off. At oral argument plaintiffs argued, for the first time, that they need disclosure to determine what pressure Governor Hochul might have asserted upon TBTA. However, from the four corners of the complaint there is nothing to support plaintiff's allegations that the TBTA/MTA held a "sham vote." All the complaint alleges is that the TBTA/MTA board - which, again, had already approved a higher toll schedule – approved, with one dissenting vote, the phased-in tolling schedule announced by Governor Hochul. That the Governor was confident that the TBTA/MTA board would approve a plan with lower is not a smoking gun, it is not even a gun.

Thus, Governor Hochul's motion to dismiss plaintiffs' cause of action seeking a declaration that the TBTA/MTA board's November 18, 2024, be declared null and void as *ultra vires* should be dismissed.

Accordingly, plaintiffs' third cause of action and motion for injunctive relief should be dismissed as moot.

This Court has considered plaintiffs' other arguments and finds them to be unavailing and/or non-dispositive.

Conclusion

Defendants' motions to dismiss are hereby granted, plaintiffs' motion for an injunction is denied, solely as moot, and the Clerk is hereby directed to dispose of the instant action accordingly.

| 6/23/2025 | HON. ARTHUR F. ENGORON |
|---|---|
| DATE | ARTHUR F. ENGORON, J.S.C. |

CHECK ONE:  [X] CASE DISPOSED  [ ] NON-FINAL DISPOSITION
[ ] GRANTED  [ ] DENIED  [ ] GRANTED IN PART  [X] OTHER
APPLICATION:  [ ] SETTLE ORDER  [ ] SUBMIT ORDER
CHECK IF APPROPRIATE:  [ ] INCLUDES TRANSFER/REASSIGN  [ ] FIDUCIARY APPOINTMENT  [ ] REFERENCE

450653/2025  TOWN OF HEMPSTEAD ET AL vs. HOCHUL, KATHY ET AL
Motion No. 001 002 003